# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:19-cv-451-RJC-DCK

BYRON DIMECHE JOHNSON,      )
      )
      Plaintiff,      )
      )
      v.      )      <u>ORDER</u>
      )
STATE FARM MUTUAL      )
AUTOMOBILE INSURANCE CO.,      )
      )
      Defendant.      )

## I.    FACTUAL BACKGROUND

This matter arises out of Plaintiff Byron Dimeche Johnson ("Mr. Johnson")'s assertion of a property damage claim with Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") after the alleged theft of his vehicle.  Mr. Johnson's lawsuit includes claims for breach of contract, unfair and deceptive trade practices, and bad faith.  (Doc. No. 1-1).  Following several months of litigation, the parties through counsel attempted to settle the case through negotiation, including mediating on July 1, 2020.  After an unsuccessful mediation conducted by parties' attorneys, (Doc. No. 16), counsel for the parties continued negotiations.  (Doc. No. 26 at 2).  On July 14, 2020, State Farm served Plaintiff with a written Offer of Judgement – a settlement offer of $109,000 (which included interest accrued prior to entry of judgment, attorneys fees, and court costs) in complete settlement of all of Mr. Johnson's claims.  (Doc. No. 19; Doc. No. 21).

Mr. Johnson met with his lawyers Mr. John Gresham ("Mr. Gresham") and Mr. Malcolm McSpadden ("Mr. McSpadden") on July 17, 2020 to discuss this settlement offer. (Doc. No. 23 at 1). Plaintiff's lawyers allege that at this meeting they described the settlement terms fully and advised Mr. Johnson to take the deal, even reducing their own fees from the case in order to encourage settlement (down to $7,500 for Mr. McSpadden and $6,500 for Mr. Gresham), after which Mr. Johnson voluntarily agreed to accept the offer. (Doc. No. 23 at 1–2; Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 10). Mr. Johnson has since asserted that his lawyers scared and intimidated him into accepting the offer at this meeting, and that furthermore he left the meeting believing that his counsel would not accept the offer until several days later. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 20, 22, 26). Nonetheless, Mr. Johnson affirms that he ultimately informed his lawyers at this meeting of his agreement to the settlement offer. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 20). Mr. Johnson also does not dispute that his attorneys agreed to reduce their fees to the specified amount, although Mr. Johnson indicates that his own actions in this regard were not driven by financial considerations. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 17). Immediately following the meeting, Mr. Gresham emailed Defendant's counsel to inform them that "Mr. Johnson has authorized me to accept the State Farm offer of $109,00. [sic] contained in the offer of judgment date July 14, 2020." (Doc. No. 23 at 2).

The next day, on July 18, 2020, Mr. Johnson informed Mr. McSpadden that he no longer wished to accept the offer. (Doc. No. 23 at 2.) In the ensuing days his

2

lawyers told him that the offer had already been accepted on July 17, 2020, and furthermore that if Mr. Johnson took action to renege on the agreement, they would withdraw from their representation in the case. (Id.). Later, Mr. Johnson called Defendant's lawyer and informed them that he was no longer represented. (Id.). He apparently told Defendant's lawyer that he had indeed accepted the offer at the time, but that he now wished to negotiate further. (Id.).

On July 29, 2020, Defendant filed a Motion for Entry of Judgment, seeking that the Court enter Judgment for the amount agreed to in the Settlement. (Doc. No. 21). On August 5, 2020, Mr. Johnson himself wrote this Court to say that he was rejecting State Farm's offer, and that his own attorneys had resigned as a result. (Doc. No. 24). Subsequently Mr. Gresham and Mr. McSpadden submitted a brief arguing that the Settlement Agreement should be upheld against Mr. Johnson's current wishes. (Doc. No. 23).

This Court held a hearing on November 17, 2020 with Plaintiff, Plaintiff's lawyers, and Defendant's counsel in attendance. (See Doc. No. 29 (Nov. 17, 2020 Hearing Transcript)). Defendant's counsel argued that the Court should enter Judgment for $109,000 based on the settlement offer and acceptance, stating that they had negotiated with Plaintiff's counsel throughout the process with every indication that his counsel had actual and apparent authority to settle the case. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 32). Mr. Johnson himself agreed that he told his lawyers at the July 17, 2020 meeting that he accepted the settlement offer, but stated that he did so under duress when his lawyers

3

intimidated and threatened him into accepting.  (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 20–22).  Mr. Gresham and Mr. McSpadden disagreed, reiterating that Mr. Johnson had made a voluntary decision to accept the settlement offer for $109,000 laid out in Doc. No. 19, that they did not intimidate or threaten Mr. Johnson into his willing acceptance, and that they relayed this acceptance to the Defendant's counsel immediately upon hearing it from Mr. Johnson.  (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 9–11).  Mr. Gresham and Mr. McSpadden have since withdraw as Mr. Johnson's attorneys.  (Docs. Nos. 26–28).

## II.   STANDARD OF REVIEW

"District courts have inherent authority . . . to enforce settlement agreements."  Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 540 (4th Cir. 2002).  In order to do so, the Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions."  Id. at 540-541.  "A settlement agreement is a contract governed by fundamental principles of contract law.  As such, the settlement agreement comes into being as soon as an offer, acceptance, and consideration are exchanged."  Bader v. Sossomon, 2010 WL 11549131 at *2 (W.D.N.C. Sept. 8, 2010) (quoting United States ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co., Inc., 34 F.Supp.2d 397, 399-400 (N.D.W. Va. 1999), affirmed 203 F.3d 824 (4th Cir. 2002)).

"It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has

*implied* authority to conduct the litigation and to negotiate its resolution." Id. at 229–230 (emphasis in original); Hensley, 277 F.3d at 541 n.*. "But the substantive decisions of whether to bring suit, to dismiss suit, or to settle are not by implication ones that the attorney is authorized to make." Id. (internal citations and quotations omitted); contra Moore, 936 F.2d at 163-64 (relying on a 5th Circuit decision stating that "[t]he general rule is that counsel of record have the authority to settle litigation on behalf of their client"); Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 298 (4th Cir. 2000) (citing Moore for same). An attorney's authority to negotiate on behalf of his client "is far different from the authority to agree to a specific settlement." Auvil v. Grafton Homes, Inc., 92 F.3d 226, 231 (4th Cir. 1996).

The attorney's authority to speak and act for his client is ultimately governed by agency principles.[1] Restatement (Third) of the Law Governing Lawyers Ch. 2, Introductory Note; Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994). Under North Carolina law the "principal is liable upon a contract duly made by his agent with a third person (1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; [or] (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." Investment Props. of Asheville, Inc. v. Allen, 283 N.C. 277, 285–86, 196 S.E.2d 262, 267 (1973).

---

[1] The Court generally looks to the Restatement of Agency to determine the general common law rules. Cilecek v. Inova Health System Services, 115 F.3d 256, 260 (4th Cir. 1997) (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 752 (1989)).

5

"Actual authority is that authority which the agent reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." Manecke v. Kurtz, 222 N.C. App. 472, 475, 731 S.E.2d 217, 220 (2012). By contrast, apparent authority "'is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses.'" Zimmerman v. Hogg & Allen, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974). Pursuant to the doctrine of apparent authority, the "principal's liability is to be determined by what authority a person in the exercise of reasonable care was justified in believing the principal conferred upon his agent." Branch v. High Rock Realty, Inc., 151 N.C. App. 244, 250, 565 S.E.2d 248, 252–53 (2002). Specifically, "an attorney has apparent authority to settle a case when his client, through his acts or omissions, causes a third party, in good faith and in the exercise of reasonable prudence, to rely on the agent's authority to act on the principal's behalf. Under these circumstances, the agent can bind the principal." Hood v. Uber Techs., Inc., No. 1:16-CV-998, 2019 WL 93546 at *4 (M.D.N.C. Jan. 3, 2019), aff'd sub nom. Haskett v. Uber Techs., Inc., 780 F. App'x 25 (4th Cir. 2019) (citing Auvil (internal quotation marks omitted)).

"The law of apparent authority usually depends upon the unique facts of each case. Thus, in a case where the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact. Where different reasonable and logical inferences may not be drawn from the evidence, the question is one of law for the court." Bookman v. Britthaven Inc., 233 N.C. App. 454, 458, 756 S.E.2d 890, 894

(2014).  In this case, while there is a factual dispute about Mr. Gresham's actual authority to enter the contract, the evidence in the record is sufficient to determine as a matter of law whether Mr. Gresham had the apparent authority to agree to settlement offer on Mr. Johnson's behalf.  An evidentiary hearing on the matter is, therefore, unnecessary.

## III.  ANALYSIS

Mr. Gresham represented Mr. Johnson at all relevant times during the case, and the record shows that all related correspondence flowed through him, including the acceptance of Defendant's Offer of Judgment.  Therefore, to find a binding agreement between Mr. Johnson and State Farm here, the Court must first determine that Mr. Gresham was cloaked with either actual or apparent authority to consummate such an agreement when he agreed to accept the Offer of Judgment for Mr. Johnson.

### A.  Actual Authority to Settle

Actual authority can be expressly granted or implied from the words and conduct of the parties in light of the circumstances.  Restatement (Third) of Agency § 3.01.  Under the theory of actual authority, even if Mr. Johnson had other intentions, his counsel's conduct would be authorized if Mr. Gresham reasonably drew the inference that Mr. Johnson intended him to enter into a final agreement.  Id.[2]  In this case there is a dispute of fact over whether Mr. Gresham could have

---

[2] The law of North Carolina is not to the contrary.  "Special authorization from the client is required before an attorney may enter into an agreement discharging or terminating a cause of action on the client's behalf."  Harris v. Ray Johnson Const. Co., Inc., 534 S.E.2d 653, 655 (N.C. Ct. App. 2000).  "North Carolina law has [also]

reasonably drawn the inference that Mr. Johnson intended his counsel to sign the settlement agreement for him.

Mr. Gresham contends that at their July 17, 2020 meeting to discuss the settlement offer, after the attorneys explained the adverse consequences to Mr. Johnson's case and to Mr. Johnson individually if he did not accept the offer, "Mr. Johnson agreed to accept the Offer of Judgment." (Doc. No. 23 at 1). Mr. Gresham and Mr. McSpadden's accounts describe a meeting at which Mr. Johnson freely and willingly decided to allow Mr. Gresham to accept the settlement offer for Mr. Johnson. By contrast, Mr. Johnson says that he felt "threatened" by his attorneys with possible jail time and that he was "scared into saying yes" when he ultimately told his lawyers he would take the deal, and furthermore that he would have more time to decide. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 20–25). Mr. Johnson's account, if true, could provide the possibility that his attorneys did not reasonably infer that he voluntarily intended them to accept the settlement on their behalf.

If the Court needed to resolve this matter by determining whether Mr. Gresham had 'actual authority' to enter into the settlement, then the Court would

---

long recognized that an attorney-client relationship is based upon principles of agency." <u>Dunkley v. Shoemate</u>, 515 S.E.2d 442, 444 (N.C. 1999). Accordingly, an attorney's "[a]ctual authority is that authority which [he] reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." <u>Harris</u>, 139 N.C. App. at 830. It "may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." <u>Id.</u>

be required to resolve this factual conflict at an evidentiary hearing to allow the "fact to be determined by the trier of fact." <u>Bookman</u>, 233 N.C. App. at 458. However, such a hearing is not necessary in this case. The dispute between Mr. Johnson and State Farm can instead be resolved on the grounds of Mr. Gresham's apparent authority to enter into the settlement agreement.

     B.   <u>Apparent Authority to Settle</u>

The correspondence between the parties throughout the negotiation process reveals Mr. Gresham's apparent authority to settle the case. Mr. Gresham entered his representation of Mr. Johnson before this Court on November 27, 2019, (Doc. No. 8.), and represented Mr. Johnson in all matters before this Court from that time through the date of the alleged settlement acceptance. Notably, Mr. Gresham's representation included representing Mr. Johnson at Mediation in this case, and engaging in Mediation and settlement discussions on Mr. Johnson's behalf. (Doc. No. 16; Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 5). Mr. Gresham continued these settlement discussions with Defendant's counsel after Mediation and in the lead-up up to Defendant's Offer of Judgment. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 5–6). Defendant stated that during this time "there was never any indication that there was any limit of authority for Mr. Johnson's counsel or any other indication to State Farm that there was anything other than actual or apparent authority." (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at at 7–8). Mr. Johnson has not provided any reason to doubt this assertion. Defendant then submitted an Offer of Judgment of $109,000 to Plaintiff's counsel on July 14, 2020, (Doc. No. 19), to which Mr. Gresham replied on July 17, 2020: "Mr. Johnson has

authorized me to accept the State Farm offer of $109,00. [sic] Contained in the Offer of Judgment date July 14, 2020." (Doc. No. 20). Several days after receiving this acceptance to the offer, State Farm heard for the first time that Mr. Johnson disagreed with his own attorneys about the settlement agreement. (Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 8 – 9).

This timeline demonstrates that State Farm "in the exercise of reasonable care was justified in believing [Mr. Johnson] conferred upon his agent" the ability to settle the case on his behalf. High Rock Realty, 151 N.C. App. at 250. Mr. Johnson had allowed his counsel to represent him not only throughout the litigation, but also at the actual discussions to that point regarding a possible settlement. Mr. Gresham represented him before this Court and to the Defendant, and Mr. Gresham engaged in settlement discussions at the Mediation and afterward at which he represented Mr. Johnson as well. The record reflects that Mr. Johnson never indicated to Defendant's counsel that there was any reason to doubt that his own lawyers, in their settlement discussions, could not speak on his behalf with regard to a settlement offer acceptance. As a result, Mr. Johnson's "acts or omissions" of holding out his counsel as negotiating on his behalf and never citing any limitations to this delegation caused State Farm "in good faith and in the exercise of reasonable prudence to rely" on Mr. Gresham's ability to settle the case, whereupon Mr. Gresham's clear acceptance of the settlement offer at Mr. Johnson's apparent behest bound Mr. Johnson to the $109,000 settlement his case against State Farm. Hood, 2019 WL 93546 at *4.

Nor would this result change if the Court were to find – which it has not – that Mr. Gresham and Mr. McSpadden had exceeded their actual authority in accepting Defendant's settlement offer. Even when an agent agrees to a settlement agreement to which his client has expressly not consented, the client can still be bound by the agreement if the agent has accepted the offer while acting under apparent authority granted by his client, and if the other negotiating party has no reason to know that the agent has exceeded his actual authority in doing so. See, e.g., Purcell Int'l Textile Grp., Inc. v. Algemene AFW N.V., 185 N.C. App. 135, 139, 647 S.E.2d 667, 671 (2007) (upholding a settlement agreement even when defendant had not in fact consented to the settlement and the agent had lied to plaintiff about defendant's acceptance, but when plaintiff had no reason to know these facts at the time of acceptance). Therefore, this Court would reach the same result even if it found that Mr. Gresham and Mr. McSpadden had in fact violated their own authority or duty to Mr. Johnson by settling the case here – and again, this Court has made no finding of the sort.

Following Mediation and settlement negotiations during which Mr. Johnson allowed Mr. Gresham to negotiate on his behalf without any apparent limitations, and Defendant had no reason to believe anything to the contrary, Mr. Gresham's July 17, 2020 email stating that "Mr. Johnson has authorized me to accept the State Farm offer" described in the July 14, 2020 "offer of judgment" is an email that bound Mr. Johnson to the acceptance of that offer.

C.    Terms and Conditions

In addition to finding a complete agreement, the Court "must [also] be able to determine its terms and conditions."  Hensley, 277 F.2d at 541.  The terms of this particular contract are simple and straightforward, and are laid out in the Offer of Judgment that Defendant sent Plaintiff on July 14, 2020.  (Doc. No. 19).  Defendant offered Plaintiff $109,000 to settle this case.  (Id.).   In exchange for this consideration, Mr. Johnson must waive and release all claims and actions in this case against State Farm, including Mr. Johnson's claims for trebled damages and attorney's fees.  (Id.).  Thus, the terms and conditions are clearly set forth in the exhibits before the Court.  The fact that the agreement was not ultimately signed by the Plaintiff does not bar enforcement.  Alexander v. Industries of the Blind, Inc., 901 F.2d 40, 41 (4th Cir. 1990).

D.    Mr. Johnson's Subsequent Repudiation of the Agreement

Following Mr. Gresham's acceptance of the Offer of Judgment, Mr. Johnson began telling his own lawyers and Defendant's lawyers that he wished to negotiate further and would not agree to the settlement.  (Doc. No. 23 at 2; Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 9).  The disputed facts show that Mr. Johnson either a) clarified that he had never wanted to accept the agreement all along, or else b) changed his mind after having previously chosen to accept the agreement. (Doc. No. 23 at 1–2; Doc. No. 29 (Nov. 17, 2020 Hearing Transcript) at 20–25). Neither fact would affect the determination of the case.

If Mr. Johnson did indeed freely tell his lawyer to accept the settlement agreement and then later changed his mind, his reversal would have no effect on

12

the valid agreement that existed by the time he changed his mind because "having second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." Young v. FDIC, 103 F.3d 1180, 1195 (4th Cir. 1997). Alternatively, if Mr. Johnson's testimony is instead accurate, the Offer of Judgment would still be binding as between Plaintiff and Defendant pursuant to Mr. Gresham's apparent authority to accept the offer on Mr. Johnson's behalf, as discussed above.

Therefore, no matter who is more accurately describing the July 17, 2020 conversation between Mr. Johnson and his attorneys, the effect is the same as to the case between Mr. Johnson and State Farm: the settlement agreement is valid and enforceable.

Where "a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily." Swift v. Frontier Airlines, Inc., 636 F. App'x 153, 156 (4th Cir. 2016) (citing Hensley, 277 F.3d at 540). Here, there was an Offer of Judgment to settle this case, the offer had clear terms and conditions, the offer was accepted by Plaintiff's attorney acting with at least apparent (if not actual) authority to accept the offer, and no sufficiently substantial justification has been raised to justify nonperformance. Therefore the Court will summarily enforce this agreement.

## IV.  CONCLUSION

The Court finds that the Offer of Judgment was accepted and constitutes a binding settlement agreement between Plaintiff and Defendant, the terms of which are clearly discernible from the record.

**IT IS, THEREFORE, ORDERED** that:

1. State Farm's Motion for Entry of Judgment, (Doc. No. 21), is **GRANTED**; and

2. State Farm shall enter the settlement amount of $109,000 with the Court, which shall disburse the funds as follows:

   a. $95,000 shall be disbursed to Plaintiff Byron Johnson;

   b. $7,500 shall be disbursed to Malcolm McSpadden, representing the reduced representation fee agreed to between Plaintiff and counsel; and

   c. $6,500 shall be disbursed to John Gresham, representing the reduced representation fee agreed to between Plaintiff and counsel.

**SO ORDERED.**

Signed: December 7, 2020

Robert J. Conrad, Jr.
United States District Judge

14